# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49639

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: March 14, 2023 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MARVIN SAMUEL BURNS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge. Hon. David C. Epis, Magistrate.

Decision of the district court on intermediate appeal affirming judgment of conviction for driving under the influence, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Marvin Samuel Burns appeals from his judgment of conviction for driving under the influence (excessive), Idaho Code § 18-8004. Burns argues the magistrate court erred when it denied his request to instruct the jury on the necessity defense and, on intermediate appeal, the district court erred when it affirmed Burns' conviction based on its conclusion that no reasonable view of the evidence supported Burns' necessity theory. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Burns with driving under the influence (excessive). Burns, his son, Dylan, and his daughter, Samantha, all testified at trial. Burns, Dylan, and Samantha attended a

1

family barbecue. Both Burns and Dylan were drinking heavily while Samantha did not drink any alcohol. Dylan acknowledged that he possessed two knives while at the party. Samantha left the party around 10:00 p.m. Dylan testified he and Burns argued for an extended period. Dylan admitted he threated Burns, saying he could beat him up and could probably kill him. Dylan denied holding a knife at any point during the argument. Burns testified he did not recall seeing a knife during their argument; yet, he had a "clean slice" on his thumb and did not recall how it happened.

Burns and Dylan eventually separated; Dylan went inside the house and Burns sat in his vehicle. Burns called Samantha asking her to pick him up, and she arrived after 11:00 p.m. Burns also called 911 for assistance. Upon arrival, Samantha observed Burns in his vehicle and Dylan in the house. Samantha saw a fresh cut on Burns' hand but did not know how it occurred. She denied seeing Dylan with a knife when she went into the house to get Burns' phone from Dylan.

Samantha could not acquire Burns' phone so she went back outside to Burns' vehicle. Samantha and Burns decided Burns would drive his vehicle to the trailer park office and park it there because he was worried for the safety of himself and his vehicle. Burns decided Samantha would follow him in her own car, and then she would drive Burns to her house from the trailer park office. Burns testified that when he saw Dylan come out of the house, cross the yard, and walk through the gate, he drove off because he was fearful Dylan may harm him, although he could not recall a specific threat at that time.

Officer Guzman testified that when he first observed Burns' vehicle, the vehicle was "reversing . . . back into the driveway of the trailer park." An investigation ensued and Officer Guzman deduced Burns was intoxicated. Eventually, Burns was arrested and taken to jail where a blood draw revealed that Burns' blood alcohol level was .207.

The magistrate court and counsel discussed proposed jury instructions after presentation of the evidence at trial. Burns' counsel objected to the magistrate court's refusal to instruct the jury on the necessity defense. The jury found Burns guilty of driving under the influence (excessive).

On intermediate appeal to the district court, Burns argued the magistrate court erred by not instructing the jury on the necessity defense and that the conviction should be set aside under Idaho Criminal Rule 29. The district court affirmed the magistrate court. Burns timely appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

"A motion for a jury instruction is judged by whether there is a reasonable view of the evidence that supports the requested instruction. This Court reviews the district court's decision for abuse of discretion." *State v. Meyer*, 161 Idaho 631, 634, 389 P.3d 176, 179 (2017). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Burns argues that the magistrate court abused its discretion when it concluded that there was no reasonable view of the evidence presented in this case sufficient to support a necessity instruction, and that the district court erred in affirming the magistrate court's decision.[1]

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132. Therefore, a trial court must deliver instructions on the rules of law that are material to the determination of the defendant's guilt or innocence. *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). This necessarily includes instructions on the nature and elements of the crime charged and the essential

---

[1] Burns did not raise his Idaho Criminal Rule 29 argument on appeal to this Court.

legal principles applicable to the evidence that has been admitted. *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004).

Although each party is entitled to request the delivery of specific instructions, *State v. Severson*, 147 Idaho at 694, 710, 215 P.3d at 414, 430 (2009), such instructions will only be given if they are "correct and pertinent." I.C. § 19-2132. A proposed instruction is not "correct and pertinent" if it is: (1) an erroneous statement of the law; (2) adequately covered by other instructions; or (3) not supported by the facts of the case. *State v. Jeske*, 164 Idaho 862, 872, 436 P.3d 683, 693 (2019).

"If the requested instruction is not supported by the evidence, the court must reject the requested instruction." *State v. Howley*, 128 Idaho 874, 878, 920 P.2d 391, 395 (1996). In other words, a defendant must present facts to support each element of a prima facie case for each defense. *State v. Garner*, 159 Idaho 896, 898, 367 P.3d 720, 722 (Ct. App. 2016).

Burns asserts the magistrate court erred in failing to instruct the jury on his necessity defense. In *State v. Hastings*, 118 Idaho 854, 855, 801 P.2d 563, 564 (1990), the Idaho Supreme Court set forth the elements of the necessity defense:

1. A specific threat of immediate harm;
2. The circumstances which necessitate the illegal act must not have been brought about by the defendant;
3. The same objective could not have been accomplished by a less offensive alternative available to the actor; and
4. The harm caused was not disproportionate to the harm avoided.

The magistrate court found Burns failed to make a threshold showing of evidence that there was a specific threat of immediate harm and that there was no less offensive alternative to driving under the influence. The district court agreed.

"Mindful" of the trial evidence, particularly "mindful" of Samantha's testimony, Burns nonetheless argues his testimony that Dylan threatened to kill Burns and later came towards him while he was sitting in his vehicle showed some factual support for a specific threat of immediate harm. Burns testified he remembered being outside with Dylan when Dylan threatened, "I will wipe you out. I could murder you. I will slice and dice you." Burns testified he and Dylan separated--Burns into his vehicle and Dylan into the house. When Samantha arrived, she saw Dylan in the doorway of the house and Burns in his vehicle. Samantha interacted with Dylan inside the house. Afterwards, Samantha and Burns created a plan to drive his car to the trailer park office, and then she would take him to her home. Samantha testified Burns was crying and

4

shaking; she had never seen her dad that scared before. As Samantha and Burns were about to drive away, Burns testified, "[a]nd then when he came back outside, that's when I drove off, because I wasn't going to confront or attack or anything. I needed to get away." However, Burns also testified on cross-examination that he did not hear Dylan say anything and did not know what Dylan was doing as he crossed the yard and opened the gate. Burns explained he did not stick around to find out.

The magistrate court correctly found that there was no reasonable view of the evidence that would suggest there was a specific threat of immediate harm to Burns. The necessity defense is limited to prevention of harm that is reasonably perceived as an immediate danger. It may not be used to justify illegal acts taken to foreclose speculative, debatable, or long-term risks. A mere possibility of harm that may occur sometime in the future is insufficient. *State v. Chisholm*, 126 Idaho 319, 322, 882 P.2d 974, 977 (Ct. App. 1994). Although Burns was distraught by the prior interactions, there is no evidence of a specific threat to Burns as Dylan walked to the gate. Burns suggests the specific threat is implied from the prior death threats; however, Burns' and Dylan's separation ended the specific threat of immediate harm. At the time Burns chose to drive his vehicle while intoxicated, he admitted he was not aware of a threat from Dylan and he did not know Dylan's intentions. Therefore, he was, at best, speculating whether Dylan was going to act upon his past threats towards Burns. Accordingly, there is no reasonable view of the evidence that would suggest a specific threat of immediate harm occurred at the time Burns drove his vehicle while intoxicated.[2]

Furthermore, the necessity defense is only available when the same objective could not have been accomplished by a less offensive alternative available to the actor. *Hastings*, 118 Idaho at 855, 801 P.2d at 564. Burns contends his driving while intoxicated without incident was less offensive than Dylan's threats which, if acted upon, would have resulted in possible murder, aggravated battery, or aggravated assault. Burns misconstrues the proper analysis. We focus on whether Burns' object--to get away from Dylan--could have been accomplished through less offensive means than driving while intoxicated.

---

[2]     Burns testified to a concern for his vehicle--which is why he decided to move it. Yet, Burns failed to show evidence of a threat to his vehicle. In this appeal, Burns does not meaningfully advance a concern for his vehicle as a justification for a necessity defense. Therefore, we reject any implication that the necessity defense should have been provided to the jury due to Burns' purported need to protect his vehicle.

As the district court noted, there is undisputed evidence that there was a less offensive alternative available. Burns could have walked away. Burns could have sought out the assistance of a neighbor. Most importantly, instead of driving his vehicle, Burns could have rode with Samantha in her car to separate himself from Dylan. The following testimony from Samantha was unchallenged by Burns:

PROSECUTOR: Okay. And if your dad had asked you to give him a ride that day, you would have given him a ride?

SAMANTHA: Yes, that was the plan. He wanted to remove his pickup and himself from the situation because he was scared, so we were going to move his pickup so he did not have to worry about his pickup, and he was getting in my vehicle and he was going home with me.

As such, there is no reasonable view of the evidence presented that would support Burns had no less offensive alternative than driving while intoxicated to protect himself from Dylan's threats. Therefore, the magistrate court did not abuse its discretion in denying Burns' request for a necessity defense instruction, and the district court did not err in affirming that decision.

## IV.

## CONCLUSION

The magistrate court correctly concluded there was no reasonable view of the evidence to support Burns' request for a necessity defense instruction. Accordingly, we affirm the district court's decision on intermediate appeal affirming Burn's judgment of conviction. Therefore, Burns' judgment of conviction is affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.